IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LEO RICK DURAN,**

    **Plaintiff,**

**v.**                                                                                                            No. 18-cv-0734 SMV

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 15], filed on January 15, 2019. The Commissioner responded on March 5, 2019. [Doc. 17]. Plaintiff replied on March 27, 2019. [Doc. 18]. The parties have consented to my entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") did not apply the correct legal standards in evaluating Dr. Owen's, Dr. Parmley's, and Dr. Manole's opinions. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (2018) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481 (1980). This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The 'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that he impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on July 5, 2016. Tr. 15. He alleged a disability-onset date of June 30, 2016. *Id.* His claims were denied initially and on reconsideration. *Id.* ALJ Stephen Gontis held a hearing on March 7, 2018, in Albuquerque, New Mexico. Tr. 15. Plaintiff appeared in person at the hearing with his attorney. Tr. 38. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Sandra Trost, who testified via telephone. *Id.*

The ALJ issued his unfavorable decision on April 23, 2018. Tr. 30. He found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. Tr. 17. At step one, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "hernias, diabetes mellitus, and affective disorders." Tr. 18. The ALJ also found that Plaintiff's mild obstructive sleep apnea was not severe. *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 18–21. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 21–28. The ALJ found that Plaintiff had:

> the [RFC] to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. [Plaintiff] can stand and/or walk for six hours in an eight-hour workday with normal breaks. [Plaintiff] can sit for six hours in an eight-hour workday with normal breaks. [Plaintiff] can push and/or pull fifty pounds occasionally and twenty-five pounds frequently. [Plaintiff] can frequently climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights. He is limited to simple, routine tasks. He can have frequent interactions with supervisors, and occasional interactions with co-workers and the public. He is limited to

tolerating few changes in a routine work setting. Any time off task can be accommodated by his normal breaks.

Tr. 21.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as an HVAC technician, a teacher's aide, a janitor, a mattress maker, or a forklift driver. Tr. 28. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 29–30. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* The Appeals Council denied review on June 19, 2018. Tr. 1–3. Plaintiff timely filed the instant action on July 31, 2018. [Doc. 1].

## **Analysis**

Remand is warranted because the ALJ failed to apply the correct legal standards in weighing the opinions of Dr. Owen, Dr. Parmley, and Dr. Manole. Specifically, the ALJ adopted the opinions of Drs. Owen and Parmley but then failed to incorporate all of their limitations into the RFC assessment and failed to explain the omission. Additionally, the ALJ failed to give legitimate reasons for rejecting Dr. Manole's opinion. Proper evaluation of these medical opinions may render moot Plaintiff's other alleged errors, and thus, the Court declines to pass on them at this time.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161

5

(10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (2012)[3]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and quotation marks omitted)); *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary*, 695 F.3d at 1161 (finding that ALJs must discuss the weight assigned to each medical opinion) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

A. Dr. Owen and Dr. Parmley

John Owen, Ph.D., evaluated Plaintiff on October 18, 2016. Tr. 435–37. Dr. Owen opined, in relevant part, that Plaintiff had moderate difficulty in the ability to interact with supervisors. Tr. 437. Later, on February 8, 2017, Meagan Parmley, Ph.D., reviewed Plaintiff's file and

---

[3] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

formulated an opinion about his ability to function. Tr. 112–14. In relevant part, Dr. Parmley opined that Plaintiff had moderate limitations in his ability to perform at a consistent pace and to accept instructions and respond appropriately to criticism from supervisors. Tr. 113. The ALJ adopted both doctors' opinions. Tr. 27, 28. He erred, however, in assessing an RFC that failed to account for all the limitations assessed by Dr. Owen and Dr. Parmley without explaining the omissions. [Doc. 15] at 10–11, 12–14.

Specifically, Plaintiff's moderate difficultly in interacting with supervisors (as assessed by Dr. Owen) is inconsistent with "frequent" interactions with supervisors (as assessed by the ALJ in the RFC). Tr. 21. The Court agrees with Plaintiff that the ALJ erred in failing to explain why he effectively rejected this portion of Dr. Owen's opinion.[4] [Doc. 15] at 10–11.

Similarly, the moderate limitations in Plaintiff's ability to perform at a consistent pace and to accept instructions and respond appropriately to criticism from supervisors (as assessed by Dr. Parmley) are inconsistent with performing simple routine work (as assessed by the ALJ in the RFC). *Id.* at 12–14. Without an explanation from the ALJ about why he rejected these limitations, remand is required.

Defendant's arguments do not change the result. As Defendant sees it, there is no error because the unskilled jobs listed at step five are consistent with (apparently any and all) moderate limitations in mental functioning. [Doc. 17] at 12. Defendant argues that even assuming the limitations assessed by Drs. Owen and Parmley were added to the RFC assessment, the outcome would have been the same, and therefore, Plaintiff was not prejudiced by any alleged omission.

---

[4] Plaintiff reasons that "frequent" interactions with supervisors amount to 1/3 to 2/3 of a workday. [Doc. 15] at 11 (citing Social Security Ruling 85-15, 1985 SSR LEXIS 20, at *18).

*Id.* At bottom, Defendant's argument is that "moderate difficulty" in the ability to interact with supervisors (as assessed by Dr. Owen) is accounted for in the RFC's limitations to unskilled work. *Id.* at 12–13 (first citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) and then citing *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016)). In the same vein, Defendant urges that Dr. Parmley's opinion is consistent with the RFC assessment.[5] [Doc. 17] at 11.

"There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Vigil*, 805 F.3d at 1204; *see also Chapo*, 682 F.3d at 1290 n.3 (finding that a limitation to unskilled work accounted for "issues of skills transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level"). This appears to be such a case; the RFC assessment does not adequately address the mental limitations at issue.

Limiting Plaintiff to simple, routine tasks (or unskilled work),[6] as the ALJ did here, does not account for moderate limitations in his ability to (1) interact with supervisors, (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (3) accept instructions from and respond appropriately to criticism from supervisors. This discrepancy is evidenced by the fact that these mental abilities are considered "critical" for unskilled work. *See* POMS § DI 25020.010(B)(3)(k) and (i). Nor do the other mental limitations

---

[5] Defendant also argues that the ALJ was not required to utilize the doctor's language verbatim in the RFC assessment. [Doc. 17] at 11–12. This, however, is a straw-man argument because Plaintiff never suggested that the ALJ was required to parrot the doctor's words. *See* [Doc. 15] at 10–14.

[6] The Court finds no material difference in the RFC's limitation to "simple, routine tasks" and "unskilled" work. *See Vigil*, 805 F.3d at 1204 (equating simple work with unskilled work); SSR 96-9p, 1996 SSR LEXIS 6, at *9, 1996 WL 374185, at *9 (defining mental requirements of unskilled work to include "[u]nderstanding, remembering, and carrying out simple instructions").

in the RFC assessment—frequent interactions with supervisors, occasional interactions with co-workers and the public, few changes in a routine work setting, and normal breaks, Tr. 21—account for these limitations. In fact, the moderate difficulty in interacting with supervisors is not only unaccounted for in the RFC assessment, it appears to preclude the RFC's frequent interactions with supervisors.

Because the ALJ adopted the opinions of Dr. Owen and Dr. Parmley, he was required either to incorporate their opinions into the RFC or explain any omission. This he did not do, and remand is required for proper evaluation of Dr. Owen's and Dr. Parmley's opinions.

### B. Dr. Manole

Athanasios Manole, M.D., examined Plaintiff on October 22, 2016. Tr. 439–49. Among other limitations, Dr. Manole opined that due to Plaintiff's left inguinal hernia, he should be limited to lifting "light" objects, i.e., 20 pounds by Plaintiff's report, and could hold a "desk job." Tr. 445, 448. The ALJ rejected Dr. Manole's examining opinion in favor of the non-examining opinions to find that Plaintiff could perform "medium" work. Tr. 27–28. The ALJ explained his reasons for rejecting Dr. Manole's opinion as follows:

> Dr. Manole's report indicates [Plaintiff] was able to move about with ease, suggesting he found no objective clinical evidence to support any physical deficits upon examination. Moreover, Dr. Manole stated that [Plaintiff] can hold a desk job. I note that Dr. Manole did not document any physical limitations that would affect his activities of daily living, which is supported by his objective findings upon examination, and helpful in assessing the severity of [Plaintiff]'s physical conditions. However, he failed to offer a function-by-function analysis, only stating [Plaintiff] could lift, carry, and handle *light* objects, and had no difficulties walking, performing postural maneuvers, or moving about. Thus, I have a[cc]orded only limited weight.

9

Tr. 27 (emphasis added). Plaintiff challenges the ALJ's reasons for rejecting Dr. Manole's opinion. As Plaintiff sees it, the ALJ's reasons are either illegitimate or unsupported by substantial evidence. [Doc. 15] at 14.

First, Plaintiff argues that Dr. Manole was not required to provide a function-by-function assessment, and thus, it was illegitimate to reject his opinion on that basis. *Id.* at 15. As Plaintiff correctly explains, the duty to perform a function-by-function assessment belongs to the ALJ, not the doctor.[7] *Id.*; *see* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (listing the factors to be weighed in evaluating a medical source opinion, none of which is a function-by-function assessment); Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *3 (explaining the purpose of a function-by-function assessment, which is unrelated to the weighing of a medical source opinion); *see also Green v. Comm'r of Soc. Sec. Admin.*, 734 F. App'x 600, 603 (10th Cir. 2018) (commenting that a function-by-function assessment was not required of a medical source but was required of the ALJ). The Court agrees with Plaintiff that, to the extent Dr. Manole's opinion lacked a function-by-function assessment, such omission was not a legitimate basis to reject the opinion.

Moreover, Dr. Manole did, in fact, individually assess Plaintiff's ability to sit, stand, walk, lift, and carry.[8] Tr. 440, 448. The ALJ's finding that the doctor assessed *only* an exertional level

---

[7] When an ALJ assesses a plaintiff's RFC, it is usually necessary for the ALJ to *first* individually assess the plaintiff's ability to lift, carry, walk, stand, push, and pull, and *then* determine the corresponding exertional level of work, e.g., sedentary, light, medium, heavy, or very heavy. If an ALJ fails to first assess the plaintiff's ability to function in each area individually and, instead, proceeds directly to an exertional level of work, the ALJ may overlook some limitations or restrictions and may arrive at an incorrect exertional category. Social Security Ruling ("SSR") 96-8p 1996 SSR LEXIS 5, 1996 WL 374184, at *3–4.

[8] Dr. Manole opined that Plaintiff had no limitation in sitting but could stand for no more than 20 minutes and could walk no farther than 30–40 yards, both due to fatigue. Tr. 440; *see* Tr. 448 (finding a "moderate" limitation in the ability to walk). Further, on a form asking whether Plaintiff had limitations in 14 individual areas of functioning, Dr. Manole marked "yes" for two areas, indicating limitations in Plaintiff's ability to lift and carry. Tr. 448. For each

(i.e., light) and provided no function-by-function assessment, therefore, is not supported by substantial evidence. *Id.*

Defendant makes no effort to defend the reasons offered by the ALJ. She fails to respond to Plaintiff's arguments. Instead, Defendant argues that the ALJ's according limited weight to Dr. Manole's opinion should be affirmed for reasons that the ALJ never discussed. Defendant argues that Dr. Manole's opinion was properly accorded limited weight because the limitations in walking, lifting, and carrying were "directly based on Plaintiff's subjective reports [that he could only lift 20 pounds or less, which] were not supported by any exam findings or other medical evidence." [Doc. 17] at 13 (citing Tr. 448). Further, she argues that Dr. Manole's exam reflected full strength, normal range of motion, the ability to squat and rise with ease, and normal gait, and therefore, no limitation beyond those in the RFC assessment would be warranted. *Id.* The problem for Defendant is that the ALJ did not reject Dr. Manole's opinion for these reasons. The arguments, therefore, amount to impermissible post hoc rationalizations and are not bases on which the ALJ's decision can be affirmed. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("The magistrate judge's (and appellee's) post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. Judicial review is limited to the reasons stated in the ALJ's decision . . . ." (citation omitted)).

What is more, Defendant is simply incorrect that the lifting restriction was not supported by any exam finding or other medical evidence. According to Dr. Manole, the lifting restriction

---

category, lifting and carrying, Dr. Manole noted that Plaintiff "state[d] that he c[ould] only lift 20 pounds or less due to hernia." *Id.* Dr. Manole then found that Plaintiff could handle a desk job. *Id.*

was based, at least in part, on the doctor's objective confirmation of inguinal hernia. Tr. 440 ("The [hernia] pain is worsened by lifting. This problem limits the patient's ability to work by unable [sic] to lift."). And the ALJ himself agreed not only that Plaintiff suffered from hernia, but that his hernia was severe. Tr. 18.

Finally, Defendant argues that Plaintiff fails to explain how Dr. Manole's opinion translates into any additional functional limitations beyond those assessed in the RFC. [Doc. 17] at 13. The Court does not agree. Dr. Manole's opinion explicitly (1) limits Plaintiff to lifting, carrying, and handling "light objects," Tr. 445, (2) provides a 20-pound lifting restriction, Tr. 448, and (3) indicates that Plaintiff can "hold a desk job," *id.* These statements directly conflict with the 50-pound lifting restriction assessed in the RFC. *See* Tr. 21 (ALJ's RFC assessment). Therefore, if Dr. Manole's opinion were adopted, the RFC assessment would be more restrictive. The Court finds that the ALJ failed to apply the correct legal standard in evaluating Dr. Manole's opinion. The ALJ was required to offer legitimate reasons, supported by substantial evidence, for rejecting Dr. Manole's opinion, but he did not. Remand is required for proper evaluation of Dr. Manole's opinion.

## Conclusion

The Court finds that the ALJ failed to apply the correct legal standards in weighing the opinions of Dr. Owen, Dr. Parmley, and Dr. Manole. Because proper evaluation of these medical opinions may render moot Plaintiff's other alleged errors, the Court declines to pass on them at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing

[Doc. 15] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**